UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

SCOTT POPE and TRAVELERS                    Case No. 06-CV-0516 (PJS/JJG)
INDEMNITY CO. OF AMERICA,

               Plaintiffs,

v.

ELABO GMBH,

                 Defendant;                    MEMORANDUM OPINION AND ORDER

and

ELABO GMBH,

           Third-Party Plaintiff,

v.

TENTE-ROLLEN GMBH,

           Third-Party Defendant.

---

Cory P. Whalen, SIEBEN GROSE VON HOLTUM & CAREY, LTD., for plaintiff Scott Pope.

Steven Theesfeld, YOST & BAILL, LLP, for plaintiff Travelers Indemnity Company of America.

Tamara L. Novotny, Peter G. Van Bergen, and Sarah L. Showalter, COUSINEAU MCGUIRE CHARTERED, for defendant/third-party plaintiff Elabo, GmbH.

Defendant/third-party plaintiff Elabo GmbH ("Elabo") moves for summary judgment on

the basis that the Court lacks personal jurisdiction over it. For the reasons that follow, the Court

construes Elabo's motion as one to dismiss for lack of personal jurisdiction and denies the motion.

## I. BACKGROUND[1]

Elabo is a manufacturer of sophisticated testing equipment. Elabo is based in Crailsheim, Germany; the company does not maintain a place of business in the United States, does not own any real or personal property in the United States, and does not employ a distributor or sales representative in the United States. Elabo does, however, occasionally sell products directly to buyers in the United States. This lawsuit relates to an allegedly defective testing machine that Elabo manufactured in Germany and sold directly to Carl Zeiss IMT Corporation in Minnesota ("Carl Zeiss Minnesota").[2] Carl Zeiss Minnesota manufactures measurement devices used in industry, and it belongs to a family of companies that descended from a business founded in the mid-nineteenth century by the German lens-maker Carl Zeiss.

Carl Zeiss Minnesota has a sister company based in Oberkochen, Germany, named Carl Zeiss IMT GmbH ("Carl Zeiss Germany"). This German sister company contacted Elabo in 1999 to request a price quote on a testing machine. Elabo provided a quote to Carl Zeiss Germany on October 21, 1999. Gerlach Decl. Ex. B.[3] Although the first page of the quote is in

---

[1]To the extent that any facts are in dispute, the Court construes the facts in the light most favorable to plaintiffs.

[2]The "IMT" in "Carl Zeiss IMT Corporation" stands for "industrial measuring technology."

[3]The declaration of Rainer Gerlach, Elabo's managing director, is Exhibit 1 to Elabo's memorandum in support of its motion for summary judgment [Docket No. 136]. A second, notarized copy of the declaration was filed as Docket No. 139. The attachments referenced in the text are attached to the first copy of the Gerlach declaration.

German, the remaining pages (which describe the machine in detail) are in English, and the first page bears a handwritten notation, "engl. für Zweigwerk USA" — that is, "English for USA branch plant."[4]  *Id.* at 1.  Further, the price quote specifies that the machine will have an "American standard plug."  *Id.* at 2.

Several months later, in April 2000, Carl Zeiss Minnesota sent a purchase order to Elabo for the testing machine described in Elabo's October 1999 price quote.  Carl Zeiss Minnesota offered to pay $17,230 for the machine.  Gerlach Decl. Ex. C.  In mid-May, Elabo sent an order confirmation to Carl Zeiss Minnesota increasing the price to $17,743.36, and Carl Zeiss Minnesota responded with a purchase order accepting the new price.  Gerlach Decl. Exs. D, E.  Elabo shipped the tester directly to Carl Zeiss Minnesota in July 2000.  Gerlach Decl. Ex. F.

Elabo next heard from Carl Zeiss Minnesota three years later, in 2003, when an employee of Carl Zeiss Minnesota inquired about having the tester repaired.  Suppl. Gerlach Decl. ¶ 7(b) & Ex. I at 1 [Docket No. 173]; Holmgren Aff. ¶ 3 [Docket No. 160].  Because Elabo had no repair facilities in the United States, Carl Zeiss Minnesota shipped the tester to Elabo in Germany in mid-September, and Elabo returned the tester in mid-October after repairing and calibrating it.  Suppl. Gerlach Decl. Ex. I at 21, 31.  The repair and calibration, plus customs duties, cost roughly $1,600.  *Id.* at 26.

Carl Zeiss Minnesota next contacted Elabo four years later, in 2007, to purchase replacement parts for the tester.  Suppl. Gerlach Decl. ¶ 7(e); Erickson Aff. ¶ 4 [Docket No. 162].

---

[4]Elabo describes the price quote as "a proposal written in German, not English."  Elabo Reply Mem. at 2 [Docket No. 171].  This is not quite accurate.  Only the first page of the proposal is in German; the rest is in English.  Gerlach Decl. Ex. B.

Elabo quoted a price, and Carl Zeiss Minnesota purchased the parts for a total cost, including shipping, of roughly $850.  Erickson Aff. Ex. 2.

In addition to Carl Zeiss Minnesota, Elabo has done business with one other Minnesota-based company, Tetra-Pak.  It appears that Elabo sold a testing machine to Tetra-Pak (apparently also known as Tetra Rex Packaging) in 1998.  Suppl. Whalen Aff. Ex. 3 [Docket No. 189].  In 2004, Elabo sold Tetra-Pak some replacement parts.  Theesfeld Aff. Ex. 1 at 4-11 [Docket No. 167].  And in 2005, Elabo calibrated and repaired Tetra-Pak's testing machine (much as Elabo had calibrated and repaired Carl Zeiss's machine in 2003).  *Id.* at 12-20.

## II.  ANALYSIS

### A.  Standard of Review and Waiver

Elabo purports to move for summary judgment on the basis that the Court lacks personal jurisdiction over it.  The Eighth Circuit has not squarely decided whether the defense of lack of personal jurisdiction may be raised in a summary-judgment motion or whether, by its nature, it must be raised in a motion to dismiss.  But this Court agrees with other courts and leading authorities that a motion raising the defense of lack of personal jurisdiction is necessarily a motion to dismiss under Rule 12(b)(2), and not a motion for summary judgment under Rule 56.  *See, e.g., Robinson v. W. NIS Enter. Fund*, No. C97-41, 1999 WL 33656834, 1999 U.S. Dist. LEXIS 23199 (N.D. Iowa Mar. 31, 1999).

As the leading treatise observes, "[i]n general, courts have ruled that summary judgment is an inappropriate vehicle for raising a question concerning . . . personal jurisdiction . . . ."  10A Charles Alan Wright et al., *Federal Practice and Procedure: Civil* § 2713 at 235 & n.45 (3d ed. 1998) (hereinafter *Federal Practice and Procedure*).  This makes sense, as a court that lacks

personal or subject-matter jurisdiction does not have power to enter *any* kind of a judgment —

summary or otherwise.  *See id.* at 239 ("If the court has no jurisdiction, it has no power to enter a

judgment on the merits and must dismiss the action.").  That is why a dismissal for lack of

personal or subject-matter jurisdiction is always without prejudice; such a dismissal implies

nothing about the merits of the dismissed claims because the court is not empowered to address

the merits of the dispute.  By contrast, a grant of summary judgment is a ruling on the merits, and

thus has preclusive effect.  *See EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1048-49 (3d

Cir. 1993) ("A grant of summary judgment and a dismissal for lack of personal jurisdiction,

however, are wholly different forms of relief.  The latter is a dismissal without prejudice,

whereas the former is a ruling on the merits which if affirmed would have preclusive effect.")

(citation omitted).

Rule 12 itself provides that motions to dismiss for lack of personal jurisdiction are not

transformed into summary-judgment motions even when a court considers matters outside the

pleadings.  Specifically, Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c),

matters outside the pleadings are presented to and not excluded by the court, the motion must be

treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  Notably,

Rule 12(d) does not provide that a Rule 12(b)(2) motion to dismiss for lack of personal

jurisdiction must be treated as a motion for summary judgment if matters outside the pleadings

are presented.  In short, a defendant who seeks to challenge personal jurisdiction must do so by

moving to dismiss under Rule 12(b)(2), and not by moving for judgment on the pleadings under

Rule 12(c) or for summary judgment under Rule 56.

That raises the question of timing.  Rule 12(b) provides that a motion asserting any of the defenses listed in that section — including the defense of lack of personal jurisdiction — "must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Read literally, Rule 12(b) suggests that if a defendant such as Elabo seeks to challenge the personal jurisdiction of the court, it must do so in a motion brought before it files an answer.  *See* 5C *Federal Practice and Procedure* § 1361 at 93 (3d ed. 2004) ("A strict interpretation of the timing provision's language leads to the conclusion that the district judge must deny any Rule 12(b) motion made after a responsive pleading is interposed as being too late.")  In this case, Elabo filed an answer before moving to dismiss for lack of personal jurisdiction.  Arguably, then, it waived its defense.

The problem is that such a reading of Rule 12(b) is at odds with other sections of Rule 12. For example, Rule 12(b) begins by providing that "[e]very defense to a claim for relief in any pleading *must* be asserted in the responsive pleading if one is required," but that "a party *may* assert" any of the defenses described in Rule 12(b) by motion.  Fed. R. Civ. P. 12(b).  Reading Rule 12(b) to *require* that the defenses it describes be asserted in a pre-answer motion would be inconsistent with the use of the permissive "may."

Moreover, Rule 12(b) concludes by providing that "[n]o defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion."  *Id.*  It is difficult to know what purpose this sentence would serve if Rule 12(b) defenses had to be raised by motion before an answer was filed.  If that were the case, the defenses would never appear "in a responsive pleading."

In addition, Rule 12(I) provides that "[i]f a party so moves, any defense listed in Rule 12(b)(1)-(7) — whether made in a pleading or by motion — . . . must be heard and decided before trial unless the court orders a deferral until trial."  Rule 12(I) thus refers to the Rule 12(b) defenses being made in *either* "a pleading *or* by motion."  Fed. R. Civ. P. 12(I).  But again, if Rule 12(b) defenses were waived if not asserted in a pre-answer motion, they would never appear in a pleading.

Finally, Rule 12(h)(1)(B) provides that certain of the Rule 12(b) defenses — including the defense of lack of personal jurisdiction — are waived if a party "fail[s] to *either*" assert the defense in a Rule 12(b) motion *or* "include it in a responsive pleading . . . ."  Fed. R. Civ. P. 12(h)(1)(B).  Rule 12(h)(1)(B) necessarily implies that if the defense of lack of personal jurisdiction is "include[d] . . . in a responsive pleading" (such as an answer), the defense is *not* waived merely because the defendant failed to file a pre-answer Rule 12(b)(2) motion.[5]  It is difficult to know how to reconcile Rule 12(h)(1)(B) with the statement in Rule 12(b) that a motion to dismiss for lack of personal jurisdiction "must be made before pleading if a responsive pleading is allowed."

The Advisory Committee on the Federal Rules of Civil Procedure may wish to address these contradictions within Rule 12.  In this case, though, neither Pope nor Travelers has argued that Elabo filed its motion too late, and, as *Federal Practice and Procedure* notes, "federal courts have allowed untimely motions if the defense has been previously included in the answer."  5C *Federal Practice and Procedure* § 1361 at 93-94 (3d ed. 2004) (footnote omitted).  Elabo did

---

[5]The defense would be waived if the defendant did file a pre-answer Rule 12 motion and failed to raise the defense of lack of personal jurisdiction in that motion.  *See* Fed. R. Civ. P. 12(h)(1)(A).

include the defense of lack of personal jurisdiction in its answer, *see* Ans. of Def. Elabo GmbH ¶ 13 [Docket No. 6], and Elabo has done nothing to waive that defense under Rule 12(h)(1). Therefore the Court will not find that Elabo is precluded from asserting the defense.

When personal jurisdiction is contested, the plaintiff must ultimately prove, by a preponderance of the evidence, facts establishing that the court has personal jurisdiction over the defendant. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). But the plaintiff need not do so "until trial or until the court holds an evidentiary hearing." *Id.* When a district court considers only affidavits or other written evidence in connection with a Rule 12(b)(2) motion, the plaintiff need only make a "prima facie showing" of jurisdiction. *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974); *see also Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (citing *Block Industries*). But the plaintiff attempting to make this prima facie showing — like the defendant seeking dismissal — cannot rely on pleadings alone. Instead, the parties must present affidavits or other evidence outside of the pleadings. *Block Indus.*, 495 F.2d at 260 ("The 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto."). In weighing that evidence, "the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." *Dakota Indus.*, 946 F.2d at 1387 (citation omitted). As long as there is "some evidence upon which a prima facie showing of jurisdiction may be found to exist," the Rule 12(b)(2) motion will be denied. *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977); *see also Watlow Elec. Mfg. Co. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir. 1988) (citing *Aaron Ferer & Sons*).

### B.  Personal Jurisdiction over Elabo

#### 1.  General Principles

As a general rule, a federal court sitting in diversity can exercise personal jurisdiction over a defendant only if doing so comports with both the long-arm statute of the state in which the federal court is located[6] and the Due Process Clause of the Fourteenth Amendment.[7]  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003).  Because Minnesota's long-arm statute, Minn. Stat.

---

[6]The requirement that the exercise of personal jurisdiction must be consistent with the forum state's long-arm statute is imposed by Rule 4(k) of the Federal Rules of Civil Procedure.

[7]In federal-question cases, the Due Process Clause of the Fifth Amendment — rather than the Due Process Clause of the Fourteenth Amendment — constrains the federal courts' exercise of personal jurisdiction over defendants.  *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389 n.2 (8th Cir. 1991).  It is possible that, under the Fifth Amendment, a defendant need merely have minimum contacts with the United States as a whole, rather than with a particular state, in order for a federal court to exercise personal jurisdiction over that defendant. *Cf.* Fed. R. Civ. P. 4(k)(2) (allowing a federal court to exercise personal jurisdiction over a defendant in a federal-question case, even when that defendant "is not subject to jurisdiction in any state's courts of general jurisdiction," as long as "exercising jurisdiction is consistent with the United States Constitution and laws").

The Eighth Circuit has sent mixed signals on this question.  In *Dakota Industries*, the court held that the same "minimum contacts analysis" applies to questions of personal jurisdiction in both diversity and federal-question cases.  946 F.2d at 1389 n.2.  But this holding seems to have been implicitly overruled by the en banc Eighth Circuit in *Warfield v. KR Entertainment, Inc. (In re Federal Fountain)*, 165 F.3d 600, 601 (8th Cir. 1999) (en banc) (expressly overruling earlier case that required, in every suit, "that there be minimum contacts between a defendant and the state in which he or she is expected to answer, before the court that issued the process may constitutionally assume personal jurisdiction over that defendant"), *reversing and remanding* 212 B.R. 960, 962 (E.D. Mo. 1997) (citing footnote 2 of *Dakota Industries* to support holding that because defendant lacked minimum contacts with forum state, due-process principles precluded exercise of personal jurisdiction in bankruptcy — i.e., federal-question — suit).  *But cf. Kooima v. Zacklift Int'l, Inc.*, No. Civ. 01-4078, 2002 U.S. Dist. LEXIS 17155, at *13 (D.S.D. Aug. 22, 2002) (citing footnote 2 of *Dakota Industries* for the proposition that with respect to personal jurisdiction, standards under the Fifth and Fourteenth Amendments are "the same").

§ 543.19, reaches as far as the Constitution allows, the Court need only consider whether exercising personal jurisdiction over Elabo is consistent with due process. *See Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995); *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 410-11 (Minn. 1992).

The Supreme Court held in *International Shoe Co. v. Washington* that exercising jurisdiction over a defendant is constitutionally permissible only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This formulation suggests an equivalence between "minimum contacts" and "fair play and substantial justice" — that is, it implies that the "minimum" level of contacts constitutionally required to support personal jurisdiction equals the level of contacts called for by "traditional notions of fair play and substantial justice."

Subsequent Supreme Court cases, however, have clarified that "minimum contacts" and "fair play and substantial justice" are separate, though related, requirements. Specifically, *Burger King Corp. v. Rudzewicz* explained: "*Once* it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." 471 U.S. 462, 476 (1985) (emphasis added; quotations omitted). Put another way, minimum contacts alone will not support personal jurisdiction if, because of other factors, the exercise of jurisdiction would not "comport with fair play and substantial justice" — that is, if exercising jurisdiction would be unreasonable. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-16 (1987) (part II-B); *Burger King*,

471 U.S. at 477-78 ("[M]inimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities."); *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 374 (8th Cir. 1990).

Thus, a federal court must engage in a two-part analysis in determining whether it has personal jurisdiction over a defendant in a diversity case.  First, the court must determine whether the defendant has minimum contacts with the forum state.  If it does not, the analysis is at an end; the court cannot exercise jurisdiction.  If it does, the court moves to the second step of the analysis: determining whether the exercise of jurisdiction over the defendant would "comport with fair play and substantial justice."  *Burger King,* 471 U.S. at 476 (quotations omitted).  The first step might be referred to as the "minimum contacts" analysis, while the second step might be referred to as the "reasonableness" analysis.

### a.  Step One: Minimum Contacts

To determine whether minimum contacts exist, a court must focus on the defendant's actions:  "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."  *Id.* at 474.  A corollary of this principle is that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Burger King*, 471 U.S. at 474 (quoting *Hanson*).  It follows that even if it was foreseeable to a defendant that a third party's actions would bring the defendant's product into a foreign state where the product might injure someone, personal jurisdiction in that state

cannot be based solely on such foreseeability.  *Burger King*, 471 U.S. at 474; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295-96 (1980).

Instead, personal jurisdiction arises only if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297; *see also Burger King*, 471 U.S. at 474.  This statement, however, is nothing more than a conclusion.  It provides that personal jurisdiction arises if the defendant reasonably anticipates being haled into a state's courts, but that begs the question of when a defendant *should* reasonably anticipate being haled into a state's courts. What is missing is an explanation of what kind of activities create a reasonable expectation of being "haled into court."

That explanation is found in the Court's "purposeful availment" requirement:  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson*, 357 U.S. at 253; *Burger King*, 471 U.S. at 475 (quoting *Hanson* and discussing "'purposeful availment' requirement").  The purposeful-availment requirement is therefore the key requirement that, if met, establishes that a defendant has minimum contacts with a forum.

It follows from the purposeful-availment requirement that "a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  *Burger King*, 471 U.S. at 475 (citations and quotations omitted).  The insufficiency of such contacts or activities to support jurisdiction is not an independent jurisdictional principle.  Rather, such insufficiency is a consequence of —

that is, a necessary corollary of — the purposeful-availment requirement.  A defendant whose contacts with a state are entirely random, fortuitous, or attenuated by definition has not purposefully availed itself of the benefits and protections of the state's laws.

*b.  Step Two: Reasonableness*

Having satisfied itself that the purposeful-availment requirement is met and thus that the defendant has minimum contacts with the forum state, the court must, in the second step of the analysis, ask whether the exercise of personal jurisdiction over the defendant would nevertheless be so unreasonable as to violate the Due Process Clause.  The Supreme Court has identified five factors that are relevant to reasonableness:  (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in efficient dispute resolution; and (5) "the shared interest of the several States in furthering fundamental substantive social policies."  *World-Wide Volkswagen*, 444 U.S. at 292; *see also Asahi Metal*, 480 U.S. at 113 (citing *World-Wide Volkswagen*).  In particular, the first of these factors — the burden on the defendant — is to be weighed against the other four in assessing the reasonableness of exercising personal jurisdiction over the defendant.  *World-Wide Volkswagen*, 444 U.S. at 292.

These five reasonableness factors must then be considered in conjunction with the defendant's contacts with the forum.  If the reasonableness factors point toward jurisdiction — for instance, if the burden on the defendant is light while the plaintiff's and forum's interests are substantial — then personal jurisdiction will comport with due process even if the defendant's contacts with the jurisdiction are relatively few.  *Burger King*, 471 U.S. at 477.  But if the reasonableness factors point strongly away from jurisdiction, this "may defeat the reasonableness

of jurisdiction even if the defendant has purposefully engaged in forum activities." *Id.* at 478. Instances in which jurisdiction is unreasonable despite purposeful availment by the defendant will likely be rare, however, because "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477 (emphasis added); *see also Asahi Metal*, 480 U.S. at 114 ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.").

It follows from these various rules and principles that whether personal jurisdiction comports with due process can be analyzed by asking:  First, did the defendant purposefully avail itself of the benefits and privileges of conducting activities in the forum?  (This is the "minimum contacts" part of the analysis.)  If not — if the defendant's contacts were fortuitous or resulted from a third party's actions (i.e., were attenuated) — then the court lacks personal jurisdiction over the defendant.  But if the purposeful-availment requirement is met, the second question is: Has the defendant provided a compelling reason why jurisdiction would be unfair — that is, has the defendant shown that the burdens on it far outweigh the interests of the forum, the plaintiff, and the judicial system?  (This is the "reasonableness" part of the analysis.)  If not, then the Due Process Clause permits the court to exercise personal jurisdiction over the defendant.

One further point bears mentioning:  The Eighth Circuit regularly lists the following five factors to be considered in personal-jurisdiction cases: (1) the nature and quality of the defendant's contacts with the forum; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in the case; and (5) the convenience

of the parties.  *See, e.g., Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004); *Digi-Tel*

*Holdings, Inc. v. Proteq Telecomms. (PTE) Ltd.*, 89 F.3d 519, 522-23 (8th Cir. 1996).

The Eighth Circuit has not explained precisely how these factors relate to the two distinct

analyses — minimum contacts and reasonableness — required by the Supreme Court, but it has

described the first three factors as primary and the latter two as secondary.  *See, e.g.*, *Digi-Tel*, 89

F.3d at 523.  It appears to this Court that the first two Eighth Circuit factors go primarily to

whether minimum contacts exist between the defendant and the forum.  In other words, to

determine — as Supreme Court case law requires — whether a defendant has purposefully

availed itself of the privilege of conducting activities in the forum, a court must look at the

quantity and quality of the defendant's contacts with the forum.  It also appears that the fourth

and fifth factors go to the reasonableness of exercising jurisdiction.  Indeed, these two factors are

already subsumed within the five factors that the Supreme Court has said must be considered in

assessing reasonableness.  *See World-Wide Volkswagen*, 444 U.S. at 292; *see also Asahi Metal*,

480 U.S. at 113.  The third factor, as the Eighth Circuit has explained, merely distinguishes

general from specific jurisdiction.  *See, e.g., Digi-Tel,* 89 F.3d at 523 n.4.[8]

Because the Eighth Circuit's five-factor test simply restates some of the factors identified

by the Supreme Court, the Court will not separately address the Eighth Circuit's formulation.

---

[8]A court is said to have specific jurisdiction over a defendant when the defendant's contacts with the forum state are sufficient to permit the court to exercise jurisdiction over claims that arise out of those contacts, but not over other claims.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  A court is said to have general jurisdiction over a defendant when the defendant's contacts with the forum state are so continuous and systematic that the court may exercise jurisdiction over any claim brought against the defendant, whether or not the claim arises out of the defendant's contacts with the forum state.  *Id.* at 415 & n.9.

Needless to say, though, as this Court undertakes the analysis dictated by the Supreme Court, each of the factors identified by the Eighth Circuit will be considered.

### 2. Application of General Principles

#### a. Step One: Minimum Contacts

Elabo contends that it lacks sufficient minimum contacts with Minnesota to support the Court's exercise of personal jurisdiction. Elabo emphasizes that it sold a single machine to Carl Zeiss Minnesota, that the sale was initiated by Carl Zeiss Germany, and that Elabo's subsequent contacts with Carl Zeiss Minnesota all stemmed from the initial sale and therefore add little to the jurisdictional analysis. Elabo Mem. Supp. Mot. S.J. at 17-19 [Docket No. 136].

Pope and Travelers counter that Elabo had "numerous" contacts with Minnesota with respect to the tester sold to Carl Zeiss Minnesota. *See* Pope Mem. Opp. Mot. S.J. at 2-3 [Docket No. 157]; Travelers Mem. Opp. Mot. S.J. at 7 [Docket No. 166]. But this is simply argument by adjective: Calling contacts "numerous" does not make them so. Pope and Travelers also emphasize that Elabo had various contacts with Tetra-Pak, to which Elabo also sold a tester. Pope Mem. Opp. Mot. S.J. at 3-4; Travelers Mem. Opp. Mot. S.J. at 3-4, 7-9.

Because Elabo's contacts with Tetra-Pak have no relationship to this case, they are not relevant unless the plaintiffs seek to establish that the Court has general, rather than specific, jurisdiction over Elabo. *See Helicopteros Nacionales*, 466 U.S. at 415 & n.9. But neither Pope nor Travelers expressly contends that the Court has general personal jurisdiction over Elabo — and rightly so. Plaintiffs cannot possibly make a prima facie case that Elabo's contacts with Carl Zeiss Minnesota and Tetra-Pak amount to the type of continuous and systematic contacts that

would support general jurisdiction.  *See id.* at 415; *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952).  Plaintiffs' discussion of Tetra-Pak is thus beside the point.

Nonetheless, the Court does find that plaintiffs have established a prima facie case that Elabo purposefully availed itself of the privilege of doing business in Minnesota.  In other words, plaintiffs have established a prima facie case that Elabo has sufficient minimum contacts to support personal jurisdiction, provided such jurisdiction would not otherwise be unreasonable.

Although Carl Zeiss Germany initially approached Elabo for a price quote, Elabo knew from the outset that any machine it might sell was destined for the United States.  Further, when Elabo actually received a purchase order, the order came from Carl Zeiss Minnesota, not from Carl Zeiss Germany.  Elabo could have chosen not to fill the order — it could have decided that the risk of tort liability in the United States was not worth whatever profit it would make on the sale — but it decided to go ahead with the sale.

The very function of the purposeful-availment requirement is to ensure that defendants are able to decide whether to engage in actions that might subject them to jurisdiction in a foreign forum.  That is why the availment must be *purposeful* rather than fortuitous, random, or attenuated.  As *World-Wide Volkswagen* held, due-process-based limitations on personal jurisdiction "allow[] potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."  444 U.S. at 297. In particular, a defendant that purposefully avails itself of the privilege of conducting activities in a particular state "can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection

with the State." *Id.* And a defendant can entirely *avoid* the risk of burdensome litigation by

refusing to do business with the state's citizens in the first place.

Of course, had Elabo sold its allegedly defective test machine to a distributor that resold

the machine to Carl Zeiss Minnesota, this case would look very different. Because the

defendant's availment must be purposeful, the actions of third parties (such as distributors) will

not create contacts on the *defendant's* part unless the defendant is at least partly responsible for

those actions.[9]

For several reasons, including that the case involved a sale through a distributor, the

Court is unpersuaded by Elabo's reliance on *KSTP-FM, LLC v. Specialized Communications,*

*Inc.*, 602 N.W.2d 919 (Minn. Ct. App. 1999). *KSTP-FM* involved the purchase by a Minnesota-

---

[9]Out-of-state manufacturers were held to be subject to personal jurisdiction in suits related to products sold through intermediaries in the following cases: *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 947-48 (8th Cir. 1998) (British manufacturer subject to personal jurisdiction in personal-injury suit related to machine designed for United States market and delivered to a distributor that served the forum state); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 615 (8th Cir. 1994) (Japanese fireworks manufacturer subject to personal jurisdiction in personal-injury suit where manufacturer "poured its products into regional distributors throughout the [United States]").

Out-of-state manufacturers were held *not* to be subject to personal jurisdiction in suits related to products sold through intermediaries in the following cases: *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 375-76 (8th Cir. 1990) (Japanese manufacturer not subject to personal jurisdiction in product-liability suit where it sold component to an intermediary that resold it for incorporation into a final product); *Humble v. Toyota Motor Co.*, 727 F.2d 709, 710-11 (8th Cir. 1984) (Japanese manufacturer not subject to personal jurisdiction in personal-injury suit related to car seat sold to, and installed by, Toyota in Japan, which then sold the assembled car into the forum state).

In *Asahi Metal*, there was no majority opinion as to whether a Taiwan-based component manufacturer whose product was sold to a Japanese company and incorporated into a product that was then shipped to California had sufficient minimum contacts with California to support personal jurisdiction. *Compare* 480 U.S. at 108-13 (part II.A, plurality op.) *with id.* at 116-21 (Brennan, J., concurring in part and in judgment).

based company, KSTP, of two billboards manufactured in Canada by a Canadian company, Adtronics, and sold through a distributor based in the state of Washington. Although the sales contract was between KSTP and the distributor, at the distributor's request, Adtronics shipped the billboards directly to KSTP in Minnesota. *Id.* at 921-22. The court held that it lacked personal jurisdiction over Adtronics and said: "Personal jurisdiction does not generally exist when a nonresident defendant makes a single, isolated sale of its goods in the forum state, especially when the sale occurs through an intermediary distributor." *Id.* at 924.

Because in *KSTP-FM*, the sale in fact "occur[red] through an intermediary distributor," the quoted remark is pure dictum with respect to single sales that do *not* occur through a distributor. Further, *KSTP-FM* is a state-court case, and it relies primarily on other state-court cases. *See id.* Thus, even if *KSTP-FM* squarely held that a single direct sale by a manufacturer to a customer could not support personal jurisdiction over a suit related to that sale, this Court would not be bound by *KSTP-FM*'s interpretation of the Due Process Clause.

This Court finds — contrary to the dictum in *KSTP-FM* — that a single direct sale by a manufacturer *can* be a sufficient contact to support personal jurisdiction in a suit related to that sale. First, treating the sale as a sufficient contact is consistent with *World-Wide Volkswagen*, which emphasized that jurisdictional rules are designed to allow defendants to structure their conduct with a full awareness of their litigation risks. 444 U.S. at 297. Second, in *Papachristou v. Turbines, Inc.*, the en banc Eighth Circuit held that personal jurisdiction existed in a suit arising from a single sale. 902 F.2d 685 (8th Cir. 1990).

*Papachristou* involved an agreement between Papachristou and Turbines, Inc. to jointly buy an airplane engine located in Texas. Papachristou was located in Arkansas, and Turbines

was located in Indiana.  They agreed that Turbines would ship the engine from Texas to Arkansas

but, as it turns out, they disagreed over whether some part of it then would be shipped onward to

Indiana.  When a Turbines employee tried to drop off *part* of the engine with Papachristou in

Arkansas, he refused delivery, contending that he should get the *whole* engine.  *Id.* at 686.

Papachristou then sued Turbines for breach of contract.

The Eighth Circuit held that Turbines' single attempted delivery of the engine in

Arkansas was sufficient to support personal jurisdiction over Turbines in Arkansas in

Papachristou's breach-of-contract suit.  The court said:

> The side trip to Marion[, Arkansas], which can hardly be called
> accidental, was for the purpose of carrying out the contract that the
> parties had previously made. Surely the place of delivery is a
> material term of the contract, in this case placing the expense of
> delivery on the seller. The contact with Arkansas was on a single
> occasion, but the contract in suit was for a single piece of property.

*Id.*  As this passage makes clear, just because a suit arises from a defendant's single contact with

a forum state, it does not follow that the forum cannot exercise personal jurisdiction over the

defendant.  If that single contact was deliberate — i.e., if it amounted to purposeful availment —

then the contact will support specific personal jurisdiction over a suit related to that contact.  *See

also McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (holding that the Due Process Clause

permitted a California court to exercise personal jurisdiction over a company that sold a single

life insurance policy to a California resident because "the suit was based on a contract which had

substantial connection" with California).

In sum, Elabo sold one of its machines to a company in Minnesota, having first

negotiated the price and other terms of the sale with that Minnesota company, knowing that the

company was located in Minnesota and would be using the machine in Minnesota.  Elabo then

put its machine on an airplane and shipped it to Minnesota.  Without question, then, Elabo

purposefully availed itself of the benefits and privileges of conducting business in Minnesota.

And without question, Elabo could reasonably have anticipated that if the machine that it shipped

to Minnesota for use in Minnesota by a Minnesota company injured a Minnesotan, Elabo would

be haled into court in Minnesota.

### b.  Step Two: Reasonableness

Because Elabo had sufficient minimum contacts with Minnesota to support personal

jurisdiction, Elabo can defeat jurisdiction only by "present[ing] a compelling case that the

presence of some other considerations would render jurisdiction unreasonable."  *Burger King*,

471 U.S. at 477.  That is, Elabo must show that, in light of Elabo's contacts with Minnesota, the

burden of litigation on Elabo is so heavy that it outweighs the plaintiffs' interests, the forum's

interest, and the interests of the judicial system in the Court's exercise of jurisdiction.  *See*

*World-Wide Volkswagen*, 444 U.S. at 292; *see also Asahi Metal*, 480 U.S. at 113.

The Court appreciates that it must be somewhat inconvenient for a German company such

as Elabo to litigate in Minnesota.  And *Asahi Metal* held that "[t]he unique burdens placed upon

one who must defend oneself in a foreign legal system should have significant weight in

assessing the reasonableness of stretching the long arm of personal jurisdiction over national

borders."  480 U.S. at 114.  But *Asahi Metal* also said, immediately following the sentence just

quoted, that "[w]hen minimum contacts have been established, often the interests of the plaintiff

and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the

alien defendant."  *Id.*

In this case, the interests of at least one of the plaintiffs (Pope) and the forum in adjudicating the dispute in Minnesota are particularly strong. Pope is a Minnesota resident who was injured in Minnesota by a machine that Elabo sold directly to a Minnesota company. Pope obviously has an interest in litigating in his home state, and as an individual, he would be more seriously inconvenienced by litigating in Germany than Elabo (a company with international reach) is by litigating in Minnesota. Further, Minnesota has an interest in ensuring both that injured Minnesotans are compensated for their injuries, and that products sold to Minnesota companies are safe. The interests of Pope and Minnesota distinguish this case from *Asahi Metal*, in which "the interests of the plaintiff and the forum in California's assertion of jurisdiction over Asahi [were] slight." *Id.*

Further, in today's world of increasing globalization and improved communication technology, the burden of international litigation is not as high as it was even twenty years ago, when *Asahi Metal* was decided. *Cf. McGee*, 355 U.S. at 223 ("[M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."). Elabo has secured competent local counsel and has vigorously litigated this case for over two years. Accordingly, given the strong interests of the plaintiff and the forum in litigating in Minnesota, Elabo cannot make the requisite compelling case that exercising jurisdiction is unreasonable.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the motion of defendant/third-party plaintiff Elabo, GmbH for

summary judgment [Docket No. 134] is construed as a motion to dismiss for lack of personal

jurisdiction and is DENIED.


Dated:  November 4, 2008                    s/Patrick J. Schiltz
                                            Patrick J. Schiltz
                                            United States District Judge